UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOHN McGUINESS,

                               MEMORANDUM AND ORDER

         Plaintiff,                       CV 11-628

     -against-                       (Wexler, J.)

EAST WEST INDUSTRIES,

         Defendant.

-----------------------------------------------------------X
APPEARANCES:

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y

★   APR 1 0 2012   ★

LONG ISLAND OFFICE

JOSEPH C. STROBLE, ESQ.
40 Main Street
P.O. Box 596
Sayville, New York 11782
Attorney for Plaintiff

MIRANDA SAMBURSKY SLONE SKARLIN
VERVENIOTIS LLP
BY: MICHAEL A. MIRANDA, ESQ.
240 Mineola Boulevard
Mineola, New York 11501
Attorneys for Defendants

WEXLER, District Judge

     Plaintiff John McGuiness ("Plaintiff"), a former employee of Defendant East West

Industries, Inc. ("East West" or "Defendant") alleges that he was terminated from employment in

violation of Federal and New York State law. Plaintiff's Federal claim alleges violation of the

Family Medical Leave Act, 29 U.S.C.§2901 (the "FMLA").[1] The State law claims allege

violation of the New York State Humans Rights Law, N.Y. Exec. L. §296, and breach of

---

[1]     Although Plaintiff's complaint also set forth a claim pursuant to the Americans
With Disabilities Act, that claim has been withdrawn.

1

contract. The latter claim is based upon rights alleged to stem from Defendant's employee manual. Presently before the court is Defendants' motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment.

## BACKGROUND

I.     Facts

The facts set forth below are drawn from documents properly before the court, including the parties' statements pursuant to Rule 56.1 of the rules of this court.

A.     Plaintiff's Employment With Defendant

Plaintiff is a resident of Suffolk County who was intermittently employed by Defendant beginning in 1993. Plaintiff left Defendant's employ for the first time in 1998, but was rehired in April of 2001. He again voluntarily resigned in 2002, and was rehired in 2006. Thereafter, Plaintiff remained an employee of Defendant until his termination in February of 2010.

Plaintiff's 2006 employment application – the last application completed by Plaintiff – states that the application "does not constitute an agreement or contract for employment for any specified period or definite duration." Upon his final rehiring, Plaintiff was provided with Defendant's employee manual (the "Manual"). The Manual, which Plaintiff acknowledged receiving, provides that it "constitutes Management guidelines only and is neither to be interpreted as a contract between [Defendant] and me, nor does it constitute a guarantee that my employment will continue for any specified period of time or end under only certain conditions." The Manual also states that "[n]o policy in this manual should be taken to constitute the terms of an employment contract."

B.     Plaintiff's Request Pursuant to The Family Medical Leave Act

Plaintiff's son suffers from what Plaintiff characterizes a severe psychological disability,

which has on occasion required hospitalization. On April 25, 2007, Plaintiff requested an accommodation to his work schedule so that he could care for his son. During the course of his conversation with fellow employee Theresa Ferraro ("Ferraro"), Plaintiff expressed that he would be satisfied with the ability to leave work two hours early to care for his son. Following the conversation with Ferraro, Plaintiff was provided with a form entitled "Intermittent Family Leave Form (the "FMLA Form"). The FMLA Form, which is before the court, was signed by Plaintiff on April 25, 2007. It memorializes the agreement reached with Ferraro that Plaintiff would be allowed to leave work "approximately two hours early per day." The FMLA Form further states Plaintiff's understanding and agreement that the leave provided "will not exceed 12 weeks/480 hours within a 12 month period and will include all Family Medical Leave hours." Following a period during which Plaintiff left work early, Plaintiff returned to his full schedule.

While the FMLA Form executed in 2007 is the only such form executed by Plaintiff referring to the care of his son, Plaintiff again requested leave under the FMLA on July 7, 2009. That leave was requested so that Plaintiff could care for himself following a car accident. Although the 2009 leave was requested to last from July 30, 2009 through October 22, 2009, Plaintiff returned to work September 8, 2009.

C.      Plaintiff's Employment Records and His Termination

Employee records signed by Plaintiff after expiration of the 12 month period provided for in the 2007 FMLA Form indicate that following the expiration of his FMLA leave, Plaintiff took paid vacation time to care for certain medical needs of his son. Such documents include, for example, a March 10, 2009 "Employee Status Report," signed by Plaintiff stating that vacation time was taken so that he could bring his son for a CAT Scan. A similar form indicates that Plaintiff took paid vacation time to attend a school meeting for his son.

3

Plaintiff's job performance for the period covering July 1, 2008 through July 1, 2009, was evaluated shortly before his July 2009 accident-related FMLA leave. While Plaintiff received nearly all "average" evaluations, and no ratings of "below average" or "unsatisfactory," it was noted that Plaintiff should pay greater attention to his inspection duties and avoid cell phone use. It was further noted that Plaintiff was absent eleven days, and late on twenty-four occasions during a 222 day period of employment. In November of 2009, Plaintiff received an "Employee Status Report" noting, again, that Plaintiff spent an excessive amount of time on his cell phone. That report further states that while it was understood that there were "problems at home," Plaintiff was previously told that he "cannot spend the better part of a day on the phone conducting personal business no matter what the circumstance."

On February 10, 2010, Plaintiff was terminated from his position with Defendant. A form entitled "Separation from Employment," states the "reason for separation," as "[l]ack of work and poor attendance." The "lack of work" refers to Defendant's contention of a slow down in the company's business and the need for cuts in staff. Following Plaintiff's termination, his position was eliminated, and was thereafter not filled.

II.    Plaintiff's Causes of Action

As noted, Plaintiff alleges both Federal and State claims. As to the Federal Claims, Plaintiff alleges that he was terminated for exercising his rights under the FMLA. Plaintiff's State Human Rights claim also alleges a violation of family leave benefits. Finally, the breach of contract claim is based upon the allegation that Defendant failed to follow the procedures set forth in the Manual.

III.   The Motion for Summary Judgment

Defendants move for summary judgment dismissing the complaint in its entirety. As to

4

the Federal claims, Defendants assert that the only FMLA leave granted Plaintiff was the

intermittent leave that expired in 2008, and that Plaintiff mistakenly believes that such leave

continued indefinitely thought the next several years of his employment. The State Human

Rights Act claim is sought to be dismissed on the same ground as the Federal claims. Finally, the

breach of contract claim is argued to fail because the Manual makes clear that neither it, nor any

of the terms contained therein, constitute a contract of employment. After setting forth

applicable legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I.      Legal Principles

A.      General Summary Judgment Standards

The standards for summary judgment are well settled. Rule 56(c) of the Federal Rules of

Civil Procedure 56(c), states that summary judgment is appropriate only if "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c); Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010).

The moving party bears the burden of showing entitlement to summary judgment. See Huminski

v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not

to weigh the evidence but is instead required to view the evidence in the light most favorable to

the party opposing summary judgment, to draw all reasonable inferences in favor of that party,

and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113,

122 (2d Cir. 2004); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The issue is "not whether ... the evidence unmistakably favors ones side or the other but

whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id.

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005)(citations omitted). Nonetheless, the party opposing the motion " 'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), quoting, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original).

As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "concrete particulars" showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984), quoting, SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996), quoting, Research Automation Corp., 585 F.2d at 33.

B.     Summary Judgment in Employment Discrimination Cases

When deciding motions for summary judgment in employment discrimination cases such as the FMLA case presented here, courts apply the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004); Smith v. Westchester County, 769 F. Supp.2d 448, 469

6

(S.D.N.Y.2011). Pursuant to that analysis, the plaintiff bears the initial burden of showing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Plaintiff's establishment of a prima facie case creates a presumption of discrimination. The defendant thereafter bears the burden of rebutting the presumption by articulating a legitimate, non-discriminatory reason for its action. Burdine, 450 U.S. 254-55; Robins, 2010 WL 2507047 at *6. If the defendant articulates such a reason, the McDonnell Douglas burden-shifting framework drops out of the picture, and the plaintiff must show that the adverse employment decision was a mere pretext for discrimination, and that the defendant's action was, more likely than not, motivated in whole or part by discriminatory reasons. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142–43 (2000). At that point, the evidence establishing plaintiff's prima facie case may still be considered along with all inferences properly drawn therefrom. See Reeves, 530 U.S. at 143.

II.     Rights Under The FMLA

The FMLA allows eligible employees to take up to twelve work weeks per year of unpaid leave due to a serious health condition of a family member that prevents the employee from performing his work function. See 29 U.S.C. § 2612(a)(1). To be eligible for FMLA leave, an employee must have worked 1,250 hours during the year prior to the period of leave. 29 C.F.R. § 825.110 (a)(2). After the taking of such leave, the employee has the right to return to the same or an equivalent position as that held before the leave. See 29 U.S.C. § 2614(a).

In addition to taking the full leave allowed by the FMLA, an employee may take "intermittent" leave under the statute. Such leave may be taken in "separate blocks of time due to a single qualifying reason." 29 C.F.R. § 825.203(a); see Barron v. Runyon, 11 F. Supp.2d 676, 679 (E.D. Va.1998). Where intermittent leave is taken, an employee is entitled to take leave at

different times during the year, without continually re-qualifying as having worked the requisite 1,250 hours during the year prior to the leave. Such leave may be taken intermittently during the year in an amount equal to the twelve weeks leave allowed yearly by the FMLA.

An employee seeking additional FMLA leave after the expiration of the 12 month period following the initial exercise of intermittent leave, must request and re-qualify for FMLA leave. Roberts, 499 F. Supp.2d at 353; see Department of Labor Opinion Letter, 2005 WL 3401779 (Sept. 14, 2005). Thus, FMLA leave, even if only intermittently taken, "cannot be taken 'forever' on the basis of one leave request. Barron, 11 F. Supp.2d at 683; see 29 U.S.C. § 2612(a)(1) ("eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period ...."); accord 29 C.F.R. § 825.200(a).

A plaintiff may state a claim under the FMLA alleging interference with rights granted under the statute, as well as retaliation for the exercise of such rights. Potenza v. City of New York, 365 F.3d 165, 167 (2d Cir.2004). To establish a prima facie case for interference under the FMLA, a plaintiff must establish: (1) status as an "eligible employee" under the statute; (2) that defendants constitute an FMLA employer; (3) entitlement to leave under the FMLA; (4) the giving of notice of the intention to take FMLA leave; and (5) the denial of FMLA benefits. Roberts v. Ground Handling, Inc., 499 F. Supp.2d 340, 351 (S.D.N.Y. 2007). To establish a prima facie case of FMLA retaliation, Plaintiff must show: (1) the exercise of rights protected under the FMLA; (2) qualification for his position; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004); Ridgeway v. Royal Bank of Scotland Group, 2012 WL 1033532 *11(D. Conn. 2012).

III.    Disposition of The Motion

    A.    FMLA Claim

Although Plaintiff's complaint does not clearly indicate whether he alleges a claim for FMLA interference or retaliation, his summary judgment papers make clear that the claim he states is for retaliation. Plaintiff's papers, which make continual reference to Defendant's knowledge of his son's condition, also make clear that he claims retaliation in connection with the FMLA leave granted for Plaintiff to care for his son.

In accord with the principles set forth above, the court first considers whether Plaintiff has come forward with sufficient evidence to establish his prima facie case of FMLA retaliation. McDonnell Douglas, 411 U.S. at 802. As noted, the first element of such a prima facie case requires a showing that Plaintiff exercised rights protected under the FMLA. See Emmons v. City University of New York, 715 F. Supp.2d 394, 417 (E.D.N.Y. 2010). As to this element Plaintiff fails.

Plaintiff makes clear that the right he asserts is a continual right of "ongoing" leave with respect to the care of his son. The only FMLA leave granted Plaintiff for such child care was the intermittent leave granted in 2007. When signing the FMLA Form, Plaintiff acknowledged that the leave was for a twelve month period only. Plaintiff argues, however, that he was "under the impression" that the leave granted was "ongoing." There is neither support in the law or the facts of this case to support any such belief, good faith or otherwise. Since a right to "ongoing" leave is not a right protected by the FMLA, it cannot constitute activity protected by the statute. Any action taken in retaliation thereto is accordingly not actionable as FMLA retaliation. Plaintiff's inability to establish a right protected by the FMLA requires dismissal of the claim, and a grant of summary judgment to Defendant.

9

Even if Plaintiff were able to establish a prima facie case of FMLA retaliation, the court

holds that Defendant has articulated "a legitimate, non-discriminatory reason" for terminating

Plaintiff. Thus, Defendant has submitted documents attesting both to Plaintiff's substandard

performance at work, including extended absences. Additionally, Defendant has established that

it downsized Plaintiff's department, and that Plaintiff was not replaced. Such evidence is more

than sufficient for the McDonnell Douglas framework to drop out of the picture, shifting the

burden to Plaintiff to show that Defendant's stated reasons are a pretext for discrimination, and

that his termination was, "more likely than not, motivated in whole or part by discriminatory

reasons." See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142–43 (2000).

There is simply no evidence supporting Plaintiff's claims of pretext. To the contrary, the

evidence shows that Plaintiff's requests for FMLA leave (both to care for himself and his son)

were granted without incident. Plaintiff was restored to his position following those periods of

leave. Moreover, Plaintiff was warned about poor attendance issues as part of his July 2009

evaluation. This evaluation came long after the expiration of Plaintiff's FMLA leave and

militates strongly against any finding of temporal proximity between any activity alleged to be

protected by the FMLA and Plaintiff's termination. When considering this evidence, along with

Plaintiff's employment record and the downturn in business attested to by Defendant, the court

holds that Plaintiff cannot show pretext. Accordingly, even if Plaintiff established a prima facie

case of discrimination based upon the exercise of FMLA protected activity, his claim for

retaliation is nonetheless properly dismissed.

B.     New York State Human Rights Act Claim

New York law provides employees with a cause of action alleging retaliation for

opposing any practice forbidden under the Human Rights Law. N.Y. Exec. L. §296. Plaintiff

10

does not allege or establish his opposition to any practice forbidden under New York Law. Accordingly, and for the reasons set forth with respect to this court's dismissal of his FMLA claim, the court dismisses any claim pursuant to the New York Human Rights Law.

### C. Breach of Contract

Plaintiff's claim for breach of contract is based upon Defendant's alleged breach of policies set forth in the Manual. Any such claim fails completely. As noted, the Manual states specifically that it "is neither to be interpreted as a contract between [Defendant] and [Plaintiff]," and that no policy or standard contained therein "should be taken to constitute the terms of an employment contract." Under these circumstances, Plaintiff states no claim for breach of contract. The claim is therefore dismissed.

### CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. The Clerk of the Court is directed to terminate the motion appearing at docket number 20, and to thereafter close the file in this case.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
April *10* , 2012